WASHINGTON B. WILLIAMS, RECEIVER OF THE WEST SHORE AND ONTARIO TERMINAL COMPANY, v. EDWARD BETTLE ET AL., STATE BOARD OF ASSESSORS.

1. The West Shore and Ontario Terminal Company is a railroad corporation within the meaning of the Railroad Taxation acts.
2. Debts cannot be deducted from the valuation of the property by the state board of assessors, unless applied for according to said acts.

3. In determining, under the twelfth section of the Railroad Taxation act of 1884, whether the tax assessed against a railroad company is greater than such company would pay if it did not pay the state tax of one-half of one per centum, but did pay full local rates on all its property and franchises mentioned in the third section of said act, the local rate to be applied is "the local rate as fixed and assessed for county and municipal purposes upon other property in each taxing district," and not such a rate as would have been sufficient to raise the same revenue, in case the valuation of the railroad property had been added to the valuation of the other property in each local assessment.

4. The fourth section of the said act is unconstitutional, being an attempt to substitute "as a correct standard of value" for railroad property "the assessed value of the real estate of persons other than railroad or canal corporations," instead of the true value of the railroad property itself, which is the sole basis of a constitutional assessment thereof.

On error to the Supreme Court. For opinion of the Supreme Court, see 21 *Vroom* 132.

For the plaintiff in error, *James B. Vredenburgh.*

For the defendants in error, *John P. Stockton, Attorney General,* and *Wm. S. Gummere.*

The opinion of the court was delivered by

Dixon, J. This writ of error brings up the adjudication of the Supreme Court upon a *certiorari* to review the tax levied by the state board of assessors against The West Shore and Ontario Terminal Company for the year 1885, under the Railroad Taxation acts.

The objection that The West Shore and Ontario Terminal Company is not a railroad corporation within the meaning of said acts, and also the objection that no deduction was allowed to the company for its indebtedness, were properly dealt with by the Supreme Court.

The complaint that the tax assessed is greater than the company would be required to pay if it did not pay the state tax of one-half of one per centum, but did pay full local rates on all its property and franchises mentioned in the third

section of the Railroad Taxation act of 1884, rests upon the twelfth section of that statute.  The pertinent provisions of this section are : that, upon the valuation of its property used for railroad purposes, each company shall pay to the state a tax at the rate of one-half of one per centum annually; that each company shall also pay, in addition thereto, a tax at the local rate  as fixed and assessed for county and municipal purposes upon other property in each taxing district, upon the valuation of its real estate (other than main stem) in each taxing district, but the last mentioned rate shall in no case exceed one per centum ; that if the addition of the state tax of one-half of one per centum to the local rate as thus limited would compel any company to pay more tax than the tax such company would pay if such company did not pay the state tax of one-half of one per centum, but did pay full local rates on all its property and franchises used for railroad purposes, without any other exemption than such as would be allowed to an individual citizen on such property, then and in such case the state board of assessors shall make such deduction as will make the tax equal to the amount that such company would pay upon all such property and franchises if assessed at full local rates without any state tax of one-half of one per centum.

The facts now before us to which this law is to be applied are : that in the township of Union the company's real estate (other than main stem) used for railroad purposes was appraised by the state board at $1,646,486 ; that all other property therein subject to taxation for county and municipal purposes was appraised by the local assessors at $665,900, and that upon this other property the local assessors fixed and assessed a tax at the rate of one per centum for the year 1885.   A tax at a rate of two hundred and eighty-eight thousandths per centum on all the property in the township, including that of this company and amounting to $2,312,386, would produce as much as a tax at the rate of one per centum upon the property in the township exclusive of the estate of the company. A similar reckoning with regard to the township of Wee-

hawken shows, that a rate of seven hundred and forty-three thousandths per centum levied upon all the property in the township would produce as much as was to be raised by the rate of one and four hundred and ninety-five thousandths per centum which was actually fixed and assessed by the local assessors, for county and municipal purposes, upon the prop-erty therein other than that used for railroad purposes.

The contention of the company is, that these hypothetical rates of two hundred and eighty-eight thousandths per centum in the township of Union and seven hundred and forty-three thousandths per centum in the township of Weehawken, instead of the rates actually fixed and assessed in these townships, shall be regarded as the local rates, for the purpose of determining, under the said twelfth section, whether the company is called upon to pay more tax than it would pay if taxed at full local rates without any state tax. If this position be maintained, then the assessment upon the company was too large; but if the actual rates, fixed and assessed by the local assessors upon the other property in these districts, be the legal limit, then the company was not called upon to pay more tax than such rates would impose without the state tax of one-half of one per centum. Hence, the question arises, which rate is that contemplated by this act.

The language of the statute seems to be decisive. It declares the limit to be "the local rate as fixed and assessed for county and municipal purposes upon other property in each taxing district." The rate is to be that which is "fixed" by taking into consideration only the "other property in each taxing district" exclusive of the property used for railroad purposes, and which is actually "assessed" upon such other property. This is "the local rate of taxation for county and municipal purposes," which, according to section 5, the local assessors are to certify to the state board, and no one is authorized to ascertain or apply any other.

The argument against this being the rate intended by the statute, rests upon the assumption that the local assessor will fix the rate at the exact proportion which the whole sum, re-

quired in his district for county and municipal purposes, bears
to the property subject to his assessment. On this assumption, the tax levied in each district will be sufficient to meet
the necessities of the district, and the amount received through
the state treasury from railroad taxation will be a surplus.
It is this undesirable result from which the plaintiff in error
derives the chief support for its contention. But why should
it be assumed that the legislature intended the local rate to be
fixed by such a proportion? There is nothing in the law
which prevents those who are to ascertain the amounts to be
levied by the local assessor from taking into consideration the
sum likely to be realized from the assessment of railroad
property by the state board, and if this be done, the entire
body of the law will work harmoniously to produce for each
locality, from all sources, a revenue as nearly as practicable
commensurate with its needs. Such was undoubtedly the
legislative design.

On the other hand, if the theory of the plaintiff in error
were adopted, one object of legislative policy, clearly indicated by this statute, would fail, viz., that of taxing railroad
property as heavily as other property, within the prescribed
limits of one-half of one per centum for state purposes, and
one per centum for local purposes. For, by this theory,
while other property was taxed in the township of Union at
one per centum, and in the township of Weehawken at one
and four hundred and ninety-five thousandths per centum, the
railroad property would be taxed in Union at only two hundred and eighty-eight thousandths per centum, and in Weehawken at only seven hundred and forty-three thousandths
per centum. Such discrimination the legislature plainly did
not intend.

The deduction made by the Supreme Court from the
assessment of the state board was at least as great as the law
required, and there is no error of which the plaintiff can
complain in this feature of the judgment.

Error is also assigned upon the ground that the real estate
of the company was assessed at a higher valuation than the

other real estate in the taxing districts where it lay, contrary to the terms of the fourth section of said act, which reads as follows : "That if the assessed value of the real estate of persons, other than railroad or canal corporations, in any taxing district wherein such railroad or canal property may be found, as ascertained by the assessors of such taxing district, is relatively lower than that which has been laid upon the land of the several companies in said taxing district, the said board [of state assessors] shall be required to accept said valuation of the assessors for such taxing district as a correct standard of value, and to thereby correct or reduce the separate valuation provided for in the second subdivision of section three of this bill."

It is impossible to vindicate the constitutionality of this section. The constitution requires that property shall be assessed for taxes according to its true value. In carrying out this provision, of course, it is necessary that the judgment of some person should be taken as the final criterion of the true value of each parcel of property assessed, and it undoubtedly falls within the province of the legislature to say who this person shall be. If the legislature had directed the local assessors to determine the true value of the property used for railroad purposes in their several districts, and the state board to fix the tax upon the value so ascertained, the constitutional injunction would have been satisfied. But no such enactment exists. The local assessors have no authority to determine the true value of property used for railroad purposes, nor is such a power conferred upon any persons except the state board of assessors and the Supreme Court on *certiorari.* The legislature might lawfully require the state board and the Supreme Court, in exercising this function, to consider the estimate which the local assessors put upon other than railroad property, but they cannot require the acceptance of this estimate as the correct standard of the value of railroad property. The property so taxed would be assessed, not according to its own true value, but according to the true value of some other property. Such a tax the legislature

cannot sanction.   This attempt of the legislature to substitute for the "true value" of railroad property "the assessed value of the real estate of persons other than railroad or canal corporations," "as a correct standard of value" for railroad property, is unconstitutional, and must fail.

The remaining assignments of error either present only disputes over questions of fact or involve points already decided in this court adversely to the positions of the plaintiff in error.

The judgment of the Supreme Court must be affirmed.

*For affirmance*—The Chancellor, Chief Justice, Depue, Dixon, Garrison, Reed, Brown, Cole, McGregor, Smith, Whitaker.   11.

*For reversal*—None.