BERGEN AND DUNDEE RAILROAD COMPANY, PLAINTIFF IN ERROR, v. STATE BOARD OF ASSESSORS AND J. WILLARD MORGAN, COMPTROLLER, DEFENDANTS IN ERROR.

Argued April 8, 1907—Decided June 17, 1907.

1. Chapter 91 of the laws of 1905, being a supplement to the act for the taxation of railroad and canal property, and known as the Duffield act (*Pamph. L.* 1905, *p.* 189), is not in conflict with

article 4, section 7, paragraph 12 of the constitution of this state, which provides that "property shall be assessed for taxes under general laws and by uniform rules according to its true value."

2. The so-called Duffield act (*Pamph. L.* 1905, *p.* 189) does not conflict with article 14 of the amendments to the federal constitution, which provides that no state shall "deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

On error to the Supreme Court.

For the plaintiff in error, *Collins & Corbin* and *George Holmes.*

For the defendants in error, *Robert H. McCarter,* attorney-general, *Bennet Van Syckel* and *John R. Hardin.*

The opinion of the court was delivered by

PITNEY, J.   The state board of assessors having in the year 1905 valued and assessed the property of the Bergen and Dundee Railroad Company, consisting of land other than main stem and commonly called second-class railroad property, situate in the taxing district of the city of Passaic, imposed thereon a tax at the local rate ($2.92 per $100) pursuant to the provisions of chapter 91 of the laws of 1905, being a supplement to the act for the taxation of railroad and canal property and known as the Duffield act.   *Pamph. L.* 1905, *p.* 189.   The company prosecuted a writ of *certiorari* to review this tax, on the ground that the Duffield act is unconstitutional.   The Supreme Court affirmed the tax on the authority of the opinion of Chief Justice Gummere in *Central Railroad Co.* v. *State Board of Assessors, ante p.* 1.   To review the judgment of the Supreme Court the present writ of error was sued out.

It is insisted that the Duffield act violates article 4, section 7, paragraph 12 of the constitution of this state, which provides that "property shall be assessed for taxes under general laws and by uniform rules according to its

true value." It is also argued that it offends against article 14 of the amendments to the federal constitution, which provides that no state shall "deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The Duffield act is a supplement to the act of 1888 (*Pamph. L., p.* 269; *Gen. Stat., p.* 3324), which took the place of the act of 1884. *Pamph. L., p.* 142; *Sup. Rev.* 1886, *p.* 1002.

The act of 1884 provided that all the property of any railroad or canal company not used for railroad or canal purposes should be assessed and taxed by the same assessors, and in the same manner, and at the same rate as the taxable property of other owners in the same taxing district; that all other property of any railroad or canal company should be assessed and taxed under this act; and that the tax imposed by this act should be in lieu of all other taxation upon the property subject to taxation under the provisions of this act. It provided that the state board of assessors should annually ascertain the true value of all property used for railroad or canal purposes of each railroad and canal company in this state, including its franchises, and should in such ascertainment separately ascertain (1) the length and value of the main stem of each railroad and of the waterway of each canal, and the length thereof in each taxing district ("main stem" being declared to include the roadbed, not exceeding one hundred feet in width, with rails and sleepers and passenger depot buildings; and "waterway" to include the towing path and berme bank) ; (2) the value of other real estate used for railroad or canal purposes in each taxing district; (3) the value of all tangible personal property of each railroad and of each canal company; (4) the value of the franchise.

Upon the entire assessed valuation of each company as thus ascertained the company was required to pay to the state for state purposes a tax of one-half of one per centum annually, and also to pay a tax at the local rate (as fixed and assessed for county and municipal purposes upon other property in each taxing district) upon the valuation of its property in the

several taxing districts used for railroad purposes other than main stem and waterways; but the last-mentioned rate was in no case to exceed one per centum of the valuation of such property. The sum of these was to constitute the tax to be paid by each company. The general tax of one-half of one per centum was to be applied to the uses of the state, and the amount received for tax upon the property separately assessed in the different taxing districts ("second-class" railroad and canal property) was appropriated to the various taxing districts, giving to each district the amount derived from the property of each company therein.

The scheme of taxation thus established was upheld as constitutional by this court in *State Board of Assessors* v. *Central Railroad Co., 19 Vroom* 146.

The act of 1888 preserved the general scheme of the act of 1884, eliminating, however, certain features which had been held unconstitutional in *Central Railroad Co.* v. *State Board of Assessors, 20 Vroom* 1, and *Williams* v. *Bettle, 22 Id.* 512.

The allotment of the separate tax upon second-class property to the several taxing districts was provided for by section 11 of this act (*Pamph. L.* 1888, *p.* 276), which was amended by a later act of the same year (*Pamph. L.* 1888, *p.* 376; *Gen. Stat., p.* 3333, *pl.* 242) in a respect not now material.

By *Pamph. L.* 1897, *p.* 147, and *Pamph. L.* 1898, *p.* 59, the law was amended so as to give to the several taxing districts the total amount of tax derived from second-class property.

The Duffield act (*Pamph. L.* 1905, *p.* 189) further changes the law with respect to the taxation of second-class property, and with respect to this alone.

Its first section provides for returns to be made annually to the state board of assessors by the several companies, showing the details of the second-class property in each taxing district.

The second, third and fourth sections of the act are as follows:

"2. On or before the first day in August in each year the state board of assessors shall ascertain and certify the value

of the property described in the foregoing section (this refers to the so-called second-class railroad and canal property) to the local taxing authorities in the several taxing districts in which the same is respectively situated; *provided*, that the right of hearing as now prescribed by law shall be in nowise restricted or abridged.

"3. The value of such property so certified shall be included in the amount of the ratables to be taxed in the several taxing districts, and the necessary tax rate for such district shall be ascertained by the local taxing authorities and certified to the state board of assessors on or before the first day of October in each year, whereupon the state board of assessors shall include in the taxes to be assessed by it, under the provisions of the act to which this is a supplement, the property described in the first section hereof at the rate in each taxing district that is so as aforesaid certified to it by the local taxing authorities, and said property shall not be subject to any other tax; *provided*, that if the local taxing authorities of any taxing district shall fail to certify to said state board of assessors within the time prescribed by this act the local rate of tax as fixed, it shall be the duty of said board to allot to the taxing district so in default an apportionment of tax at a rate not exceeding one per centum upon the class of property described in the first section hereof.

"4. The state board of assessors shall, as at present provided by law, certify and report to the comptroller of the state the assessed valuation and tax levied upon the property of each railroad and canal company in the state, and of the separate valuation of the property of such companies in each taxing district, separately valued and assessed under provisions of subdivision two (2) of section three (3) of the act to which this act is a further supplement, and the entire amount of tax derived from the assessment of this latter class of property shall be allotted to and paid over to the local taxing districts through which said railroads or canals run, giving to each such district the total amount of tax that may be so derived from such property of each railroad or canal company therein."

As we read this act, its purpose is plain. The second-class

railroad and canal property in each taxing district is first to be valued by the state board of assessors. In order to aid them in making this valuation returns are to be made by each company. The state board is then to certify to the local taxing authorities in each of the several taxing districts the valuation of the second-class property therein situate, to the end that such valuation may be added to the other taxable ratables and that the local authorities may thus ascertain the necessary tax rate for such district. This local rate is then to be certified by the local authorities to the state board, and a tax at that rate is to be imposed by the state board upon the second-class property. This tax (together with the tax on main stem, franchise and equipment provided for by the act of 1888) is then to be collected by the comptroller, and the tax on second-class property is to be allotted to and paid over to the local taxing districts. The main purpose of the act is to subject second-class railroad and canal property to taxation for local purposes at local rates without limiting this tax to one per centum, as formerly, and to do away with the former tax of one-half of one per centum upon second-class property, originally imposed for state purposes and afterwards allotted to the several taxing districts by the act of 1897. Another noticeable point is, that while under the former act the local rate was determined by the other property in the taxing district (*Williams* v. *Bettle,* 22 *Vroom* 512, 515), under this act the second-class railroad and canal property is to be taken into account in fixing the local rate.

It is argued that the proviso in section 3 of the Duffield act gives to the state board of assessors the power to impose an arbitrary rate upon second-class railroad and canal property in those taxing districts whose local authorities make default in their duty of certifying the local rate to the state board, and that this renders the operation of the act non-uniform whenever and wherever the local authorities fail in the performance of this duty. We think this argument rests upon a misinterpretation of the letter and spirit of the act. The general purpose, clearly apparent, is to subject second-class property to the local tax rate. As a means to this end, the

local rate is to be certified by the local taxing authorities to the state board. But these means are not essential to the .end. The local tax rate may be ascertained by the state board from other public sources of information; or, if need be, a certification may be required by *mandamus*. The proviso of section 3 is intended merely to impose a penalty upon the local taxing district whose officials may be negligent. It limits the amount of tax to be allotted to that taxing district, but does not either increase or decrease the amount of tax that is to be levied upon the company. It is true that section 4 goes on to provide that the entire amount of tax derived from the assessment of second-class property is to be allotted to and paid over to the local taxing district. This is intended to provide for the disposition of the money under the normal operation of the act, and is subject to the operation of the proviso in section 3, which has effect in the event that the local taxing authorities fail to promptly certify the local rate to the state board.

It will be observed that we construe the act precisely as if the proviso were appended to section 4 instead of to section 3.

In our opinion its letter, as well as its spirit, requires this construction. Ordinarily, a proviso is intended to impose a qualification or condition upon that which precedes it. But the language of this proviso shows that it cannot perform this function. Its design, plainly expressed, is to modify not the tax that is to be imposed but the allotment or apportionment of tax to any taxing district whose local authorities may fail to promptly perform their duty. But allotment is not provided for by anything that precedes the proviso; it is dealt with by the next section that follows. It is to the latter section, therefore, that the proviso necessarily pertains.

Did we not adopt this reading, the only alternative is that section 4 repeals *in toto* the proviso in section 3. If the language of section 4, which provides for the allotment of the "entire amount" of the tax upon second-class property to the local taxing districts, "giving to each such district the total amount of tax that may be so derived from such property of each railroad or canal company therein," is to be read in an

unqualified sense, applying as well where the local taxing authorities have failed to certify the local rate to the state board in due season as where this duty has been promptly performed, then the whole force and effect of the proviso in section 3 is wiped out.

We prefer to construe section 4 as modified by the proviso in section 3. But in any event the proviso has no effect upon the amount of tax that is to be levied and collected.

In other respects it seems to us that the arguments adduced in the effort to show the Duffield act unconstitutional are disposed of by the decision of this court in 19 *Vroom* 146.

The subdivision of property used for railroad purposes into two sorts, one called main stem and the other called second-class property, equally existed in the original act of 1884. The imposition of different rates of tax and taxes for different purposes upon the two classes of property likewise obtained in the original act. By that act, as by the Duffield act, second-class property was subjected to the local rate for local purposes, the only differences being those already pointed out, viz.; that in the act of 1884 there was a limitation of one per centum upon the tax that was to be imposed on this account, while the Duffield act is without this limitation; under the former act the local rate was determined by the other property in the taxing district, while by the Duffield act the second-class railroad and canal property is to be taken into account in determining the local rate; and under the former act there was a tax of one-half of one per centum upon second-class property for state purposes, which is now omitted.

The decision in 19 *Vroom* not only vindicated the classification of property according to its use for purposes of taxation, and the separate treatment of railroad and canal property as a class set apart by characteristics that substantially distinguish it from other taxable property, but that decision also sustained an act whose details were not essentially different from those of the act now under criticism.

It is argued that the Duffield act introduces into the tax system certain diversities as between different properties in the same taxing district that are listed in the general aggre-

gate for the purpose of fixing the local rate and charged with the resulting rate of tax; and this, on the ground that there are two sets of valuations, one fixed by the state board and the other by the local assessor, different kinds of return required from the taxpayer, different penalties for non-return, different dates for valuation, different modes of review, different modes of enforcement and different rates of interest upon arrears. But similar infirmities (if they were such) inhered in the original act of 1884. Indeed, if the constitutional requirement of uniform rules necessitates an identity of procedure in such details as these, it would have subverted the entire scheme of the acts of 1884 and 1888.

The creation of different agencies for the valuation of property and the assessment of taxes was recognized as valid in the former decision. Chief Justice Beasley so recognized it in delivering the opinion of the Supreme Court. 19 *Vroom,* at *p.* 8. The details of the machinery of the act, such as the taxpayer's return, penalties for non-return, dates for valuation, modes of review and enforcement, and the like, were not much discussed in the opinions delivered in this court. But they are plainly covered by the decision. The following extracts will show that the points now controverted were not overlooked.

Mr. Justice Parker said (19 *Vroom,* at *p.* 296) : "I agree with the Supreme Court in that part of the opinion which holds the act of 1884 not invalid because it directs that the valuation and assessment shall be made by a board of assessors specially appointed for the purpose. It matters not what the machinery set in motion by the legislature to execute a tax law may be so long as the principle lying at the root is not antagonistic to the constitution." And (at *p.* 297) : "All taxes are, in one sense, state taxes. They are assessed and raised under different laws enacted by the legislature of the state, and forming one general scheme of taxation, designed to bring all the property in the state (liable to tax) under general laws and uniform rules according to its true value. Different agencies are employed to assess and collect, and the sums raised are applied to various public purposes. But this does not vitiate the

MARCH TERM, 1907.　751

*45 Vroom.*　Bergen & Dundee R. R. Co. v. State Bd. of Assessors.

system of taxation, nor render invalid any one of the acts which, with others, constitute the system, if the constitutional prohibition be not violated." And (at *p.* 298) : "So long as the legislative branch of the government conforms to the constitution, it is supreme on the subject of taxation. It has the power and the right to enact that local officers in each taxing district shall assess and collect for their respective districts the county, township and city taxes, and distribute the money without its passing through the state treasury; or to enact that a state board shall assess and collect all taxes and bring all the money into the treasury, in part to be distributed by the state among the municipalities; or to provide for a state board to assess and collect one portion of the tax and local boards the residue." And (at *p.* 304) : "The uniformity of rules in taxation which the constitution requires is that uniformity which operates on the whole of a class. A tax upon property of railway corporations should be governed by uniform rules as to the property of all such companies used for railroad purposes. The act of 1884, now under examination, is within this rule."

Mr. Justice Reed said (19 *Vroom,* at *p.* 322) : "Must property be taxed at a uniform rate by reason of the requirement that property shall be taxed by uniform rules as well as by general laws? The constitution does not require that property shall be taxed by a single rule, but by uniform rules. If we assent to the proposition that property may be ranged into classes for any purpose of taxation, and also to the proposition that a law which includes all of a class is a general law, I am unable to perceive how a rule that also applies to a class lacks uniformity of operation. Judicial sentiment has been in favor of the view that the constitutional amendment was not intended to affect mere methods of procedure in levying or collecting taxes, but was designed to fix the rules by which the burden of taxation was to be distributed."

And Mr. Justice Depue (afterwards Chief Justice), in his dissenting opinion, said (19 *Vroom,* at *p.* 337) : "The constitutional provision does not touch the machinery by which taxes shall be assessed or collected. Every system of taxation

consists of two parts—the one relating to the assessment (the designation of the persons or things which shall be the subject of taxation, and the apportionment of taxation among such persons or things in the ratio prescribed by law) ; the other the collection of taxes by the enforced payment thereof. The constitutional provision in question relates only to the assessment of taxes, and in that respect concerns only such equalization of the burden of taxation as would result from the designation of the property which shall be the subject of taxation, and the apportionment of the taxes thereon, under general laws and by uniform rules according to its true value. The mere machinery by which taxes shall be assessed or collected is left in legislative discretion."

It thus appearing that the Duffield act is not in conflict with our constitutional provision that "property shall be assessed for taxes under general laws and by uniform rules according to its true value," and there being no pretence nor ground for pretence, that it operates to deprive any person of property without "due process of law," it results as a consequence that it does not deny to the taxpayer "the equal protection of the laws" that is guaranteed by the fourteenth amendment. *Kentucky Railroad Tax Cases,* 115 *U. S.* 321, 337, 338; *Pittsburgh, &c., Railway Co.* v. *Backus,* 154 *Id.* 421, 427; *Winona and St. Peter Land Co.* v. *Minnesota,* 159 *Id.* 526, 538; *Weyerhaueser* v. *Minnesota,* 176 *Id.* 550, 557.

We hold, therefore, that the act does not conflict with either of the constitutional provisions in question.

The judgment under review should be affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J.  14.

*For reversal*—None.