CITY OF JERSEY CITY ET AL., PROSECUTORS, v. STATE
BOARD OF TAX APPEALS ET AL., RESPONDENTS.

Argued January 19, 1944—Decided August 29, 1945.

Before Justices PARKER, HEHER and PERSKIE.

For the prosecutors, *Charles A. Rooney, Charles Hershen-stein, Raymond C. Connell, John J. Fallon, John N. Platoff* and *Irwin Rubinstein.*

For the respondents, *David T. Wilentz, John Solan, Maximilian M. Stallman, Collins & Corbin, Conover English, Raymond Schroeder, Katzenbach, Gildea & Rudner, Carpenter, Gilmour & Dwyer, Wall, Haight, Carey & Hartpence, Walter T. Margetts, Jr.,* and *Henry Lanahan.*

The opinion of the court was delivered by

PERSKIE, J. These are railroad tax cases. They involve the "railroad tax law of 1941." Three questions require decision.

1. Is the "railroad tax law of 1941," *Pamph. L.* 1941, *ch.* 291, as amended by *Pamph. L.* 1942, *ch.* 169, constitutional?

2. Are the provisions of *R. S.* 54:26–10 and section 34 of *Pamph. L.* 1941, *supra,* requiring the State Board of Tax Appeals to conclude its hearings on or before October 15th following the filing of the complaint (*Cf. R. S.* 54:29A–34) directory or mandatory?

3. Are prosecutors qualified to prosecute these writs?

The facts which give rise to the posed questions are substantially and briefly stated in what follows. The State Tax Commissioner (hereafter referred to as Commissioner), pursuant to the law prevailing at each time, made three separate computations of and levies for the taxes due from the railroad companies to the state, for the tax year of 1941, upon the property used by these railroad companies for railroad purposes.

The first was made on June 3d, 1941, pursuant to *R. S.* 54:19–1, *et seq.* (Taxation of Railroad and Canal Companies). This computation was based upon the "average rate of taxation" (*R. S.* 54:24.2), for the year of 1941, of $4.818 on each $100 of valuation, as ascertained under *R. S.* 54:24–3, and resulted in a total tax against the railroads of $18,322,164.33.

The second was made on November 15th, 1941, pursuant to *Pamph. L.* 1941, *ch.* 291 ("railroad tax law of 1941"). This computation, based upon the fixed statutory rate of $3 for each $100 of valuation, resulted in an *ad valorem* tax of $11,016,118.17, and based upon the prescribed statutory formula resulted in a separate franchise or excise tax of $4,163,108.43, or a total of $15,179,226.60.

The third was made on May 16th, 1942, pursuant to *Pamph. L.* 1941, *ch.* 291, as amended by *Pamph. L.* 1942, *ch.* 169. This computation resulted in a franchise or excise tax of $4,026,812.90, which when added to the *ad valorem* tax of $11,016,118.17, fixed under *Pamph. L.* 1941, *supra,* totals $15,042,913.07. Thus the net face difference between the first and third computation is $3,279,233.26.

No useful purpose would be served in detailing each of the many appeals taken to the State Board of Tax Appeals by prosecutors allegedly consisting of aggrieved municipalities and citizens and taxpayers thereof, or to detail the many writs allowed by the Supreme Court, or to set down the many reasons asserted in support of either or both of the remedies invoked.

For, conceding all other reasons to be secondary, prosecutors applied for and were allowed rules limiting the issues first to be argued and reserving all other reasons. The issues so limited relate (1) to the first posed question, "excepting however any constitutional issue based upon contentions that the assessment of the property for the year 1941 purporting to have been made under chapter 291 (*Pamph. L.* 1941) are not at true value," and (2) to the second posed question. The third posed question relates to respondents' challenge of prosecutors' right to be heard.

## As to the First Question.

From the very beginning, property used for railroad purposes has occupied and continues to occupy a separate classification, from all other property, in the field of taxation. The particular or special use to which railroad property has been and continues to be put is the basis which supports both its separate classification and the legislative power to impose a separate tax to be paid on property so classified and used. When, as here, the separate classification is proper and embraces all property in that classification, a law which taxes the property so classified may provide what tax the railroad companies, owners of the separately classified property, shall

pay, and in what way it should be assessed provided that the assessment of their property is made "under general laws and by uniform rules, according to the true value." (Article IV, section VII, paragraph 12, state constitution). That has been and is the settled law of this state. *State Board of Assessors* v. *Central Railroad Co.*, 48 *N. J. L.* 146; 4 *Atl. Rep.* 578; *Cf. Bergen and Dundee Railroad Co.* v. *State Board of Assessors*, 74 *N. J. L.* 742; 67 *Atl. Rep.* 668 (Duffield Act of 1905); *Central Railroad Co.* v. *State Board of Assessors*, 75 *N. J. L.* 771; 69 *Atl. Rep.* 239 (Perkins Acts of 1906).

However morally persuasive may be the philosophy underlying the contentions made that there can be no constitutional justification (Cf. Article I, paragraph 16, and article IV, section VII, paragraph 12, state constitution), under our system of spreading the burden of taxation equally on all property, for imposing a lesser tax burden on property used for railroad purposes than is imposed on other property, that contention is logically inconsistent and legally without merit. It is inconsistent with the admission that property used for railroad purposes may properly be separately classed and runs afoul of the aforestated cases. Equality of the burden upon all taxable property can only be attained if and when there shall be but one general tax law applicable alike to all taxable property irrespective of its particular use. That, however, continues to be the "dream unrealized." *Central Railroad Company of New Jersey* v. *State Tax Department*, 112 *N. J. L.* 5, 15; 169 *Atl. Rep.* 489, *cer. den.*, 293 *U. S.* 568; 79 *L. Ed.* 667. There is no constitutional objection either to the classification or rate features to the legislation in question. Nor can there be any objection to the separation of the franchise tax from the *ad valorem* tax. *Jersey Central Power and Light Co.* v. *Asbury Park*, 128 *N. J. L.* 141; 24 *Atl. Rep.* (2d) 526; *affirmed*, 129 *N. J. L.* 253; 29 *Atl. Rep.* (2d) 129. As to future taxation for which it was designed, the legislation, upon its face, is free from constitutional restraint. As to the tax year of 1941 it is not free from such constitutional restraint.

The legislature is supreme in its exclusive field of taxation.

For in a sense all taxes levied for state, county or municipal purposes are state taxes. But this supremacy is subject to its irrepealable contracts and constitutional restraints. *State Board of Assessors* v. *Central Railroad Co., supra; Cf. Jersey City* v. *Martin,* 126 *N. J. L.* 353, 360, 361; 19 *Atl. Rep.* (*2d*) 40.

As to the tax year of 1941, the legislation in question clearly contravenes article 1, paragraph 20, of our state constitution which provides: "No donation of land or appropriation of money shall be made by the state or any municipal corporation to or for the use of any society, association or corporation whatever."

For a little over a third of a century prior to the effective date (July 22d, 1941) of the "railroad tax law of 1941," property used for railroad and canal purposes was taxed pursuant to *R. S.* 54:19–1, *et seq.,* which has for its source *Pamph. L.* 1888, *ch.* 208, as amended and supplemented. Under that law (*R. S.* 54:19–1, *et seq.*), the Commissioner on or before the 1st day of June following his compilation of valuations and within ten days thereafter, was obliged to serve a statement upon the treasurer of each railroad company showing, *inter alia,* the amount levied against such company. *R. S.* 54:27–1. The amount as shown by this statement became due and payable on any day between June 1st and December 1st following. *R. S.* 54:27–2. If any part of these taxes remained unpaid on December 1st following the levying thereof such taxes were "considered in default" and bore interest. They were a "lien paramount to all other liens upon all the lands and tangible property and franchises of the [railroad] company in this state." That lien took effect on June 1st of the year in which it was payable and it was * * * "a debt due from the company to the state on that date for which an action at law or a suit in equity may be maintained and * * * [it was] a preferred debt in case of insolvency." *R. S.* 54:27–4. The state admittedly had a vested right to the taxes as first computed under *R. S.* 54:27–4. *Wilentz* v. *Hendrickson,* 133 *N. J. Eq.* 447; 33 *Atl. Rep.* (*2d*) 366; *affirmed,* 135 *N. J. Eq.* 244; 38 *Atl. Rep.* (*2d*) 199.

It was in this posture of the railroad tax law that the legislature, on July 22d, 1941, passed *Pamph. L.* 1941, *ch.* 290, and later amended by *Pamph. L.* 1942, *ch.* 241 (Railroad Settlement Acts), and *Pamph. L.* 1941, *ch.* 291, later amended by *Pamph. L.* 1942, *ch.* 169 ("railroad tax law of 1941"). It is conceded—in fact urged—by respondents, that chapter 291 of *Pamph. L.* 1941, "took up the matter [of railroad taxation] where chapter 290 [*Pamph. L.* 1941] left off," and that *Pamph. L.* 1941, *ch.* 291, "should not and can not be fairly construed without reference to its companion act chapter 290 [*Pamph. L.* 1941]." We concur.

We now know that *Pamph. L.* 1941, *ch.* 290, purporting to remit, cancel and abate the state's vested right to an integrated part of the tax debt which the railroads owed to it, a debt which had for its source compensation for the use of the money, &c., due the state, more commonly denominated as statutory delinquent interest, without legal, moral or equitable consideration, was unconstitutional. It contravened article 1, paragraph 20 of our state constitution. *Wilentz* v. *Hendrickson, supra.*

We turn to *Pamph. L.* 1941, *ch.* 291, as amended, *supra,* to the end of ascertaining whether it too is subject to the same infirmity inherent in *Pamph. L.* 1941, *ch.* 290, as amended, *supra.*

*Pamph. L.* 1941, *ch.* 291 ("railroad tax law of 1941") is entitled "An act relating to taxation of railroads," and repeals "chapters nineteen through twenty-nine, inclusive, of title 54 of the Revised Statutes." See title and section 75. Notwithstanding the stated repealer, the legislative direction is that it ("railroad tax law of 1941") be construed as a revision of the aforesaid repealed chapters and is not "to affect any pending litigation, nor to repeal, abate, cancel, cause to lapse or otherwise affect in any manner any assessment or the lien or obligation to pay any taxes heretofore assessed to any taxpayer, or the legal authority to collect taxes, interest and penalties which have accrued under any provision of law repealed by this act, or under any other law, except as specifically provided in this act. Nor shall this act affect in any manner any distribution, allotment or apportionment of tax

receipts made or required to be made under any provision of law repealed by this act."

It provides that "all other state and local taxes of or upon franchises or property used for railroad purposes, which may have been assessed for the first year in which this act becomes effective upon any taxpayer subject to taxation hereunder prior to the enactment of this act, *shall be abated and be canceled of record as of the effective date hereof."* (Italics supplied.)

It provides that in the first year for which this act is operative, "valuations made by the Commissioner for that year, under chapters nineteen through twenty-nine, inclusive, of title 54 of the Revised Statutes shall constitute the basis of property assessments under this act," section 73; it provides a flat rate of $3 for each $100 of valuation on "all property used for railroad purposes upon the true value thereof, section 7; it removes the franchise or excise tax from its theretofore classification under subdivision IV of *R. S.* 54:22–1; it provides for a separate franchise or excise tax and for the specific base, rate and method of computing the tax thereon, and further provides that the receipts from the taxation of property used for railroad purposes, other than from assessments of class II property together with one-half of the receipts from the franchise tax imposed thereunder, shall be applied to the uses of the state according to law and that the entire receipts derived from class II property and one-half of the receipts from the franchise tax shall be allocated and paid over to the local taxing districts. Sections 23 and 24.

The end result for the year 1941 is clear. The state "abated and canceled" the difference between the amount based on the first computation, $18,322,161.33 pursuant to *R. S.* 54:19–1, *et seq.,* and the amount based on the second and third computations, $15,042,931.07, including the franchise or excise taxes pursuant to the "railroad tax law of 1941," as amended, or $3,279,233.26. The "railroad tax law of 1941" as amended, is to the extent indicated clearly subject to the same "congenital infirmity," save as to the amount involved, that rendered the Settlement Acts (chapter 290, *Pamph. L.* 1941, as amended) unconstitutional. The fact that in the case at bar

the taxes were not delinquent in nowise adversely affects the admitted vested right of the state to the debt due it by the railroads at the time of the passage of the legislation in issue.

We therefore hold that *Pamph. L.* 1941, *ch.* 291, as amended, *supra,* is unconstitutional as applied to the taxes due from the railroads to the state for the tax year of 1941.

AS TO THE SECOND QUESTION.

Are the provisions of *R. S.* 54:26–10 and *Pamph. L.* 1941, *ch.* 291, § 34, requiring that the State Board of Tax Appeals shall conclude its hearings on or before October 15th following the filing of the complaint (*Cf. R. S.* 54:29A–34), directory or mandatory?

Prosecutors and the Attorney-General take the position that they are directory. Respondents take the position that they are mandatory and therefore the dismissals by the State Board of Tax Appeals of prosecutors' appeals from assessments made by the Commissioner for the tax year 1941 and 1942 were proper because no hearings were held within time.

We think that the provisions are directory. We need hardly labor the point that our function is to give force and effect to legislation as written. To that end, "we presume that words have been employed [save terms of art] in their natural and ordinary meaning." *In re Act Concerning Alcoholic Beverages,* 130 *N. J. L.* 123, 128; 31 *Atl. Rep.* (2d) 837. Ordinarily, the use of the word "shall" in a statute carries with it the presumption that it is used in the imperative rather than in the directory sense. But this is not a conclusive presumption. Both the character and context of the legislation are controlling. *Cf. Haythorn v. Van Keuren & Sons,* 79 *N. J. L.* 101, 105, 106; 74 *Atl. Rep.* 502. And so, too, when a fixed time is set down in a statute invoking either the jurisdiction of the subject-matter or of the parties, or both, such time is mandatory and not directory. *Cf. State Highway Commission v. Repole,* 111 *N. J. L.* 462, 463; 168 *Atl. Rep.* 464.

The fact that the legislature in 1933 (*Pamph. L.* 1933, *ch.* 423) extended the time beyond October 15th to determine

appeals from 1933 assessments, and in 1937 (*Pamph. L. 1937, ch.* 137) validated a judgment of the State Board of Tax Appeals based on hearings held, as to 1936 assessments, after October 15th, is no more dispositive of the issue than are the answers thereto that the State Board of Tax Appeals heard and determined appeals from 1937 and 1938 assessments (*State Board of Tax Appeals—Central Railroad Co.* v. *Martin,* 19 *N. J. Mis. R.* 427; 20 *Atl. Rep.* (*2d*) 330), and appeals from 1939 assessments (*Jersey City* v. *Martin,* 20 *N. J. Mis. R.* 283; 26 *Atl. Rep.* (*2d*) 733) after the statutory time fixed without legislative sanction or validation.

The State Board of Tax Appeals conducts hearings in a *quasi-*judicial capacity. It had here acquired jurisdiction over the subject-matter and of the parties. Whatever may have been the reasons for not having conducted hearings on the complaints, there is no suggestion, and none is intimated by this court, that the fault, if any, was on the part of the State Board of Tax Appeals or on the part of anyone else involved. Failure, in the circumstances, to observe the time provision could not and did not dissipate the jurisdiction which the State Board of Tax Appeals had properly acquired in the first instance over the subject-matter and of the parties. If the legislature had intended that the State Board of Tax Appeals lost jurisdiction to hear appeals after October 15th, it would clearly have said so. The mandatory sense to the word "shall" should not be given if by so doing the door to miscarriages of justice should be opened. To deny prosecutors the right to be heard as to allegedly unconstitutional legislation would indeed be unjust. No word or act of this court shall knowingly contribute to such a result. *Cf. Grobarz* v. *Slayton,* 130 *N. J. L.* 597, 599; 33 *Atl. Rep.* (*2d*) 697; *affirmed,* 131 *N. J. L.* 326; 36 *Atl. Rep.* (*2d*) 429. The question submitted is not, as urged, whether the "railroad tax law of 1941" provides for a review of the valuations for that year. The question as submitted is whether the State Board of Tax Appeals lost jurisdiction to hear the appeals after October 15th. As already stated, our answer is in the negative.

## As to the Third Question.

The supremacy of the state over its creature—the municipality, the right of the creator, to destroy its creation, the municipality—and the nebulously, autonomous status of the municipality, in relation to the state are, and have been ever since their respective existence, so deeply and firmly rooted in our form of government and so frequently acknowledged by our courts, as not to warrant further elaboration. See *Jersey City* v. *Martin*, 126 *N. J. L.* 353 (and cases collated at *pp.* 361, *et seq.*). It is, however, well to bear in mind the limited nature of the position taken by the municipalities. They concede the vested right of the state to the taxes involved. They claim no such right to those taxes. They do assert the right to relief against the disposition of those taxes contrary to constitutional limitation. Thus they invoke the aid of the judicial branch of the government to determine whether the proposed remission and cancellation of the state's vested right to the taxes are not. in the circumstances, contrary to the limitation of the fundamental law of the state—the constitution. (Article I, paragraph 20.)

And it would seem that they are entitled to be heard even though their substantial stake in those taxes is not here in issue. Their right to be heard is not without precedent. *Cf. Hoboken* v. *Martin*, 123 *N. J. L.* 442; 9 *Atl. Rep.* (2d) 332; *Jersey City* v. *Martin, supra.* Moreover, citizens and taxpayers of the respective municipalities are joined as coprosecutors. Their status as such was not made the subject of attack by proofs or other proceedings prior to argument on final hearing. Hence their qualifications as co-prosecutors are, at this late day, as a matter of fact and law beyond attack. *Jackson* v. *Mayor, &c., Gloucester City,* 6 *N. J. Mis. R.* 451, 453; 141 *Atl. Rep.* 743; *Jordan* v. *Borough of Dumont,* 105 *N. J. L.* 197, 198; 143 *Atl. Rep.* 843.

The judgments of dismissal are reversed, without costs. The causes will be remanded to the tribunals below, there to be treated consistently with this opinion.